UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ELTAYEB ABUELYAMAN** | ) ) ) | |
| Plaintiff, | ) | No. 07-1151 |
| v. | ) ) | |
| **ILLINOIS STATE UNIVERSITY,** | ) ) | |
| Defendant. | ) ) | |

## ORDER

Now before the Court is Defendant Illinois State University's ("ISU") Motion for Summary Judgment. For the reasons set forth below, ISU's motion for summary judgment on Plaintiff's discrimination claim is GRANTED and its motion for summary judgment on Plaintiff's retaliation claim is DENIED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as the claims asserted in the Amended Complaint present federal questions under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.

## BACKGROUND

Eltayeb Abuelyaman ("Abuelyaman") was employed by Defendant ISU's School of Information Technology ("IT School") from the fall of 2001 until the fall of 2006 as a probationary, tenure-track Associate Professor. He was the only non-tenured Associate Professor in the IT School. He is of Yemeni and Saudi Arabian descent, and is Muslim.

1

ISU recognizes three ranks of tenured and tenure-track probationary faculty members: Assistant Professor (lowest rank), Associate Professor (intermediate rank), and Full Professor (highest rank). The probationary period for a tenure-track faculty member is six years. Non-tenured faculty members are hired on one year contracts, renewed once members of the IT School's School Faculty Status Committee ("SFSC") vote to reappoint. The SFSC must, specifically, annually evaluate all tenure-track faculty members, make recommendations regarding pay raises, evaluate applications for tenure and promotion, and recommend whether probationary faculty members should be reappointed. The SFSC evaluates all faculty members in three areas: teaching, scholarly and creative productivity, and service. The particular schools of ISU set their own percentages for the three categories; the IT School assigns 50% to teaching, 40% to scholarly productivity, and 10% to service. Additionally, the IT School uses student evaluations as another way to evaluate its faculty members. The SFSC is comprised of at least three faculty members and the Director of the particular school serves as an ex officio voting member and Chairperson of the Committee. The 2005-2006 SFSC members who made the decision not to reappoint Abuelyaman included Dr. Beta, Dr. Alpha, Dr. Gamma, and Dr. Terry Dennis ("2006 SFSC").[1]

During the five years that Abuelyaman was employed by ISU, his service performance ranked 15th out of 15 in 2001, low for 2002, average for 2003, Level 2 of four levels (4 being highest) for 2004, and second to lowest of five levels for 2005. In Abuelyaman's January 2005 Annual Performance Review, he received a Level 1 in teaching, Level 2 in scholarly

---

[1] In the parties' Stipulated Protective Order of January 22, 2009, they agreed to utilize pseudonyms to maintain anonymity of the faculty member whose information has been disclosed.

productivity, and Level 2 in service. In his last Annual Performance Review in January of 2006, he received a "Meritorious" (five categories used - Acceptable, Effective, Meritorious, Excellent, Outstanding) in teaching, "Meritorious" in scholarly productivity, and "Effective" in service. Abuelyaman was told in a letter dated March 16, 2006, that the 2006 SFSC had voted against his reappointment past May 15, 2007.

Abuelyaman received standard and performance increment raises in the years prior to his non-reappointment. Other IT School faculty members also received pay increases in the years immediately prior to their non-reappointment. In January of 2006, mid-year salary adjustments targeted faculty of outstanding merit whose salaries fell furthest below peer group averages. Funds were distributed following the 2006 SFSC members' input. Each of the faculty members who received the mid-year adjustment were tenured, Full Professors with better performance evaluation histories than Abuelyaman's. The 2006 SFSC also determined pay increases for IT School faculty for the 2006-2007 school year. Abuelyaman received the lowest salary increase for the 2006-2007 school year (the last year he would be employed by ISU).

Though the yearly evaluation letters sent from the SFSC to IT School faculty members served to notify those professors who needed to improve their performance, some faculty were given additional suggestions. Drs. Zeta, Theta, and Eta were told of courses they could take to improve their performance, but Abuelyaman received no such notification. When it came to two other tenure-track probationary faculty members (Caucasians from America), both had completed the six-year probationary period before being terminated. However, Dr. Zeta (Black, foreign-born non-Muslim) was terminated before he completed his probationary period. Similarly, Abuelyaman had not yet completed his probationary period at the time he learned his

3

contract with ISU would not be renewed in his fifth year with Defendant.

In the spring of 2004, Abuelyaman and Drs. Alpha and Beta were members of a search committee in place to hire a new director for the IT School. Dr. Terry Dennis, a Caucasian from America, was hired as Director of the IT School in 2004. Dr. Dennis was actively involved in the SFSC evaluation process from the beginning of his employment as Director of the IT School. On more than one occasion, Abuelyaman complained directly to Dr. Dennis about what he perceived as discrimination by both IT School faculty members and students of ISU against foreign-born faculty of color. Specifically, he believed that the student evaluations were unfairly considered by the SFSC given the perceived student bias. Abuelyaman voiced his concerns about the student evaluations at a general faculty meeting and suggested alternative means of evaluating faculty, such as classroom visits by members of the SFSC. The SFSC discussed alternative methods of evaluation at its January 2006 meeting, but ultimately decided to stay with student evaluations as the primary means of evaluating teaching. At Abuelyaman's request, members of the 2006 SFSC visited his classes to observe him and did not give him any negative feedback.

On October 4, 2007, Abuelyaman filed his Amended Complaint alleging retaliation and discrimination on the basis of his race, national origin, and religion. Defendant ISU has now moved for summary judgment. The matter is fully briefed and this Order follows.

## DISCUSSION

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The

4

moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

## I. Race Discrimination Under Title VII

An employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion . . . or national

5

origin." 42 U.S.C.A. § 2000e-2(a)(1) (2009).  Under that standard, the plaintiff must establish that he was the victim of intentional discrimination.  *Mojica v. Gannett Co.*, 7 F.3d 552, 561 (7th Cir. 1993).  The plaintiff may either present direct proof of discrimination or may rely on indirect evidence using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting method of proof.  *Id.*; *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008).  Abuelyaman presents facts that he contends would allow him to proceed under both the direct and indirect methods of proof.

**A.  Abuelyaman's discrimination claim under the direct method of proof**

Despite misleading nomenclature suggesting that a plaintiff proceeding under the direct method must produce direct evidence, such a plaintiff may rely on either direct or circumstantial evidence.  *Atanus*, 520 F.3d at 671-72.  "The focus of the direct method of proof thus is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action."  *Atanus*, 520 F.3d at 671.

Direct evidence "is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption."  *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005).  This "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus."  *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003).  Abuelyaman is not able to present evidence of a "smoking gun" or other direct admission of racial animus.

Circumstantial evidence under the direct method allows the trier of fact "to infer intentional discrimination by the decisionmaker" and "suggests discrimination albeit through a longer chain of inferences."  *Rudin*, 420 F.3d at 720; *Atanus*, 520 F.3d at 671.  The Seventh

6

Circuit recognizes three types of circumstantial evidence of intentional discrimination:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn . . . . Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment . . . . [T]hird is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief . . . .

*Rudin*, 420 F. 3d at 720-21, quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Here, Abuelyaman suggests suspicious timing because his contract was not renewed the very year his SFSC evaluations began to improve. He also points to his termination in his fifth year of the usual 6-year probationary period, following his best SFSC evaluation to date, as suspicious timing indicative of discrimination. ISU contends nothing was suspicious about the timing of Abuelyaman's termination, but rather his termination was the result of continual poor performance. ISU points to the fact that in January 2006 the SFSC noted that while Abuelyaman's scholarly productivity was third out of five levels, it was "below the average for all [IT School] faculty." Furthermore, he does not dispute that he was ranked poorly in his early years teaching in the IT School.

Abuelyaman next asserts that the record illustrates that similarly situated employees, not of his protected class, received more favorable treatment in that they were not terminated for similar evaluations for which he was terminated. His 2006 ranking was similar to Dr. Kappa's, yet Dr. Kappa remained employed by ISU. Defendant notes that Dr. Kappa was not similarly

7

situated to Abuelyaman. She was a tenured professor, not on a yearly contract, had a history of quality teaching, and provided extraordinary service to the university community. Accordingly, Dr. Kappa was not similarly situated and the inference Abuelyaman asks the Court to draw is not reasonable.

As to Abuelyaman termination before the end of the probationary period, ISU states that Dr. Zeta was also terminated by ISU before the 6-year probationary period concluded because of poor performance. Also, Dr. Xi was terminated at the end of the probationary period, but had done well in past evaluations except for the one immediately preceding nonrenewal. Consequently, the evidence cannot reasonably be interpreted as showing anything more than that ISU was consistent in terminating non-tenured professors following poor performance. Ultimately, the timing of Abuelyaman's termination - the very year his SFSC evaluation improved and one year short of the 6-year probationary period - alone is not enough to defeat a motion for summary judgment given his poor evaluation history and the treatment of similarly situated employees not in his protected class.

He next points to the treatment of another faculty member in the protected group as circumstantial evidence of discrimination. In *Hasan v. Foley & Lardner LLP*, the Seventh Circuit explained that "behavior towards or comments directed at other employees in the protected group is one type of circumstantial evidence that can support an inference of discrimination." 552 F.3d 520, 529 (7th Cir. 2008). The court in *Hasan* further noted that, "whether such evidence is relevant depends on a variety of factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 529. Abuelyaman argues that the only other foreign-born Muslim in the IT School, Dr. Delta, was granted tenure

but not promoted to Associate Professor until after Abuelyaman filed the instant lawsuit, and received the second lowest pay increase for the 2006-2007 school year. However, Abuelyaman is not alleging he was discriminated against in terms of promotion. Abuelyaman is therefore unable to show that Dr. Delta is similarly situated based on their readily distinguishable circumstances and ISU's treatment of Dr. Delta is simply not relevant to any issue in this case.

Abuelyaman also attempts to support his claim by citing the selection of a Caucasian American over a foreign-born Muslim applicant of color for a Telecommunications position in 2005. However, under Seventh Circuit case law, the inquiry is limited to *employees* in the protected group. *Hasan*, 552 F.3d at 530; *Troupe,* 2 F.3d at 736. Therefore, the treatment of an applicant for employment is immaterial here.

Abuelyaman also alleges that ISU departed from its policy of counseling struggling professors. Departure from internal procedures may lead to an inference of discrimination. *Rudin*, 420 F.3d at 723 (the defendant's failure to follow its own internal hiring procedures pointed to a discriminatory motivation). In *Giacoletto v. Amax Zinc Co.*, cited by Abuelyaman, the Seventh Circuit cited a D.C. Circuit case which explained that departure from internal hiring procedures is a factor the trier of fact may consider. 954 F.2d 424, 427 (7th Cir. 1992) (*citing Johnson v. Lehman*, 679 F.2d 918, 922 (D.C. Cir. 1982)). The court in *Johnson* emphasized that it was essential that the claimant establish discriminatory motive, because departure from internal procedures alone may be insufficient. 679 F.2d at 922.

Here, Abuelyaman contends it was the practice of ISU to warn professors who were in danger of termination, citing three other professors who allegedly received oral warnings to improve their performance. ISU asserts university appointment policy is limited to annual

9

performance evaluations to which Abuelyaman was subjected each year of his employment with ISU. Abuelyaman does not dispute that he was subject to ISU's internal procedure of annual performance evaluations each year he was employed by ISU. He was encouraged to improve his performance, in other words warned, as late as his January 2006 performance evaluation. Dr. Dennis acknowledged that he spoke with Dr. Theta, telling the latter that he liked him very much and suggested Dr. Theta take additional classes to improve his teaching. Dennis Dep. pp. 127-28.

In his affidavit, Abuelyaman states that Dr. Dennis told him Drs. Zeta and Eta were warned that if they did not improve they would be terminated. Plf's Aff. ¶ 30. Significantly, the record does not reveal whether the warnings given to Drs. Zeta and Eta were unsolicited by those professors, nor does it reveal any other facts which led to the alleged additional warnings. Given the record, it is clear that ISU's internal procedures were followed in Abuelyaman's situation when he was subject to an annual performance evaluation in January 2006, as in years past. In that written Annual Performance Review, Abuelyaman was told, "Overall, your current performance is satisfactory, but not strong enough to make promotion and tenure a certainty. We encourage you to continue to work diligently to overcome the lower performance you experienced in your previous years." Def's Exh. 14 p. 399.

There are other bits and pieces of evidence Abuelyaman points to which he says suggest discriminatory intent on the part of ISU. He finds fault with the fact that the 2006 SFSC relied, in part, upon student evaluations to evaluate professors even after he complained the students were biased against foreign-born faculty of color. Abuelyaman also takes issue with the fact that the IT School did not address his concerns by implementing a peer-review program as other

schools at ISU had done. ISU emphasizes that student evaluations were part of every IT School faculty member's annual performance review and another foreign-born faculty member of color performed well in those reviews. Student evaluations were part of the 2006 review in which Abuelyaman's performance improved. It is irrelevant that other schools at ISU implemented peer-review programs to evaluate professors. The IT School used student evaluations to evaluate professors, Abuelyaman was part of the IT School, and therefore he was subject to student evaluations just as was every other faculty member in the IT School.

Next, Abuelyaman has provided affidavits of some IT School faculty and an evaluation of a faculty candidate which he says are indicative of the 2006 SFSC members' bias against foreign-born males of color. Dr. Nu worked with Abuelyaman for several years in the IT School. Dr. Nu stated that he perceived some faculty members were biased against males of Middle Eastern national origin. He further stated that Dr. Beta, a member of the 2006 SFSC, "sometimes accentuated the perceived weaknesses of those she did not prefer and accentuated the perceived strengths of those she liked." Nu Aff. ¶ 5. In her evaluation of a Muslim, foreign-born faculty candidate, Dr. Beta noted that the candidate was difficult to hear and understand, but later noted that the candidate would probably be able to speak up in the classroom. Plf's Exh. 10. To suggest that Dr. Beta was therefore biased against foreign-born males of color would require conjecture and involves a mischaracterization of Dr. Beta's evaluation of the candidate. Dr. Gamma, another of the 2006 SFSC members, explained that "Dr. Delta [another Muslim faculty member] was unavailable nearly every Friday and Monday, since he traveled to see his family in Kansas City, Missouri. I was directed that I could not organize meetings on Fridays in recognition of Dr. [Delta]'s prayer day. Dr. Delta's consistent absences made

11

scheduling meetings very difficult and often frustrating." Gamma Aff. ¶ 24. There is nothing overtly racial about Dr. Gamma's comments, and is instead limited to frustration over Dr. Delta's limited availability.

When considered in the context of the totality of the record and viewed in the light most favorable to Abuelyaman, the Court finds that he has failed to demonstrate a convincing mosaic of circumstantial evidence from which an inference of discriminatory intent might reasonably be drawn. Even considering the marginally relevant evidence, to find in Abuelyaman's favor would require a leap of faith not supported by the record. The evidence is insufficient to create a triable issue as to whether ISU's termination of Abuelyaman was impermissibly motivated by racial discrimination or disparate treatment based on race. After careful consideration of the record before the Court and having drawn all inferences in favor of the non-moving party, the Court finds that there are no genuine issues of material fact requiring resolution at trial, and summary judgment must be granted on Plaintiff's discrimination claim.

### B. Abuelyaman's retaliation claim under the direct method of proof

In order for a plaintiff to succeed on a Title VII retaliation claim under the direct method of proof, he must present evidence of: 1) a statutorily protected activity, 2) an adverse action taken by the employer, and 3) a causal connection between the two. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). The use of circumstantial evidence, such as suspicious timing, can be sufficient to establish a retaliation claim under the direct method. *Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006); *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849-50 (7th Cir. 2007). Here, the parties do not dispute that Abuelyaman suffered a materially adverse action, but they do dispute whether he

engaged in statutorily protected activity and whether he can establish a causal connection between his complaints and termination.

ISU contends that Abuelyaman cannot establish a causal connection between four separate instances of discrimination complaints by him: 1) the 2004 search committee for a new IT School director, of which he was a part, treated an African American candidate unfairly, 2) the 2005 search committee for a Telecommunications Management position treated a candidate unfairly on the basis of his race, national origin, and/or religion, 3) complaints he made to Dean Lamberson and/or Dr. Al Bowman (ISU's president), and 4) student evaluations were improperly used to make employment decisions because of student bias. The first and second instances of discrimination complaints are too remote from the 2006 SFSC's decision to terminate Plaintiff to be probative of his retaliation claim. See *Mullin v. Gettinger*, 450 F.3d 280, 284 (7th Cir. 2006) (quoting *Dey v. Colt Construction & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) ("A plaintiff may demonstrate improper motive with evidence that an adverse employment action 'took place on the heels of protected activity'").

The person who made the termination decision must have been aware of the discrimination allegations at the time that decision was made in order for the plaintiff to establish a causal connection. *Maarouf v. Walker Mfg. Co., Div. of Tenneco Automotive, Inc.*, 210 F.3d 750, 755 (7th Cir. 2000). An employee does not have to specifically state a particular type of discrimination is occurring, but must at least say something to indicate that type of discrimination (here, race, national origin, and religion) is at issue. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003); *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000).

ISU asserts that the 2006 SFSC was unaware of his complaints regarding student evaluations as biased. Abuelyaman, on the other hand, argues that Dr. Dennis and other IT School faculty were aware of his discrimination complaints. Dr. Nu's affidavit states that Abuelyaman expressed the opinion that student evaluations were biased against foreign born faculty of color at a faculty meeting. Nu Aff. ¶ 11. The affidavits of Drs. Beta and Alpha, as well as the deposition testimony of Dr. Dennis (members of the 2006 SFSC who voted not to reappoint him) show that he did make known to them that he believed student evaluations were biased against foreign-born faculty of color. Abuelyaman contends that ISU's knowledge of his student evaluation complaints presents a question of fact as to what it knew of his discrimination complaints against ISU generally. He further contends that enough indicators were presented by him so that ISU could infer he was complaining of discrimination. Abuelyaman has provided sufficient evidence to present a genuine issue as to whether the 2006 SFSC knew of his discrimination allegations at the time of his termination.

ISU cites *Amadio v. Ford Motor Co.* to argue that Abuelyaman is unable to present sufficient evidence that the 2006 SFSC members knew of his discrimination complaints. 238 F.3d 919 (7th Cir. 2001). In *Amadio*, the Seventh Circuit explained that a court cannot be called upon to speculate from the evidence in order to deny summary judgment. *Id.* at 927. But in *Payne v. Pauley*, the court explained that self-serving affidavits are sufficient to defeat a motion for summary judgment as long as they are based on personal knowledge which may include reasonable inferences drawn by the affiant. 337 F.3d 767, 772 (7th Cir. 2003). Abuelyaman's affidavit regarding what his fellow faculty members knew of his discrimination complaints is sufficient to defeat a motion for summary judgment here. His affidavit is supported by instances

in the record in which other faculty acknowledge that he voiced his concerns about the bias of students against foreign-born faculty of color, and that Dr. Dennis acknowledged Abuelyaman's involvement with the DAA Office investigations. ISU objects to his statements that he actively participated in the DAA Office's investigations as immaterial because "no evidence exists that members of the [2006 SFSC] were aware of Plaintiff's participation . . . at the time they voted to not renew his contract." Def's Reply in Support of MSJ p. 5. As just discussed, the record suggests otherwise. With regard to Abuelyaman's complaints to Dr. Bowman and Dean Lamberson, the record does not support the inference that the 2006 SFSC was aware of his complaints to those people. Abuelyaman's complaints to those men are therefore irrelevant to his retaliation claim.

Perhaps most significant to Abuelyaman's retaliation claim is the timing of his non-reappointment. His termination letter was dated March 16, 2006. In the fall of 2005, Abuelyaman and two other faculty members served on a search committee to fill a Telecommunications Management position. Dr. Dennis was active in the search, although the extent to which he was involved is disputed by the parties. The search committee narrowed it down to two candidates - one a Caucasian American and one a foreign-born Muslim - the Caucasian American was eventually hired. The DAA Office's investigation continued at least until April 2006. There is some reference in the record as to the DAA Office's investigation into the selection of the Telecommunications Management professor in 2005. Abuelyaman states in his affidavit that it was just minutes after he told Dr. Dennis of his involvement with the DAA Office's investigation into the 2005 search committee process, that Dr. Dennis told him he would

not be reappointed.[2] Dr. Dennis's deposition reveals that some time shortly after Abuelyaman complained to him about the Telecommunications position decision, Dr. Dennis handed him his termination letter. Furthermore, Dr. Dennis stated in his deposition that the normal practice was to give faculty members their termination letters at the end of the school year. Abuelyaman has provided marginally sufficient evidence to present a genuine issue as to whether the 2006 SFSC knew of his discrimination complaints regarding student evaluations and his participation in the DAA investigation at the time of his termination.

Abuelyaman further contends that ISU's failure to freeze his salary in the years leading up to his termination support the inferences that: 1) ISU did not view his teaching as deficient enough for termination and 2) Abuelyaman was not given notice of the risk of termination as others had been. The evidence of Abuelyaman's and other faculty members' pay raises is the kind that would call for speculation on the part of this Court in order to deny summary judgment. *See Amadio*, 238 F.3d at 927 ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact"). This Court will not do so where ISU has presented sufficient evidence explaining the way salaries are adjusted.

Considering the evidence in the light most favorable to Abuelyaman, and as a whole, there is a genuine issue as to whether he can establish a causal connection between his complaints of discrimination and his termination. Specifically, there is sufficient evidence of the suspicious timing of Abuelyaman's termination to defeat ISU's motion for summary judgment

---

[2] ISU objects to Abuelyaman's allegation that he was subject to discrimination and retaliation for participating in the DAA Office's investigation into Dr. Zeta's termination because Abuelyaman did not disclose that in discovery. The Court notes that its analysis is limited to Abuelyaman's involvement in the DAA Office's investigation into the 2005 Telecommunications decision.

on his retaliation claim.[3]

## CONCLUSION

For the reasons set forth above, Defendant ISU's motion for summary judgment on Plaintiff's discrimination claim is GRANTED; Defendant ISU's motion for summary judgment on Plaintiff's retaliation claim is DENIED.

ENTERED this 13th day of November, 2009.

s/Michael M. Mihm  
Michael M. Mihm  
United States District Judge

---

[3] As the Court has determined that Abuelyaman has sufficiently met his burden under the direct method, his ability to proceed under the indirect method need not be further addressed.