UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ELTAYEB ABUELYAMAN,                )  |   |
|                                    )  |   |
| Plaintiff,                         )  |   |
|                                    )  |   |
| v.                                 )  | Case No. 07-1151 |
|                                    )  |   |
| ILLINOIS STATE UNIVERSITY,         )  |   |
|                                    )  |   |
| Defendant.                         )  |   |

### ORDER

Now before the Court is Plaintiff Eltayeb Abuelyaman's Motion for Reconsideration of this Court's Ruling on Defendant's Motion in Limine [#74]. For the reasons set forth below, the motion is DENIED.

### BACKGROUND

Abuelyaman was employed by Defendant Illinois State University's ("ISU") School of Information Technology from the fall of 2001 until the fall of 2006 as a probationary, tenure-track Associate Professor. He was the only non-tenured Associate Professor in the IT School. He is of Yemeni and Saudi Arabian descent, and is Muslim. The IT School's Faculty Status Committee ("SFSC") annually evaluates probationary, tenure-track faculty members, and makes recommendations on reappointment, tenure and promotion, and pay raises. Student evaluations are considered by the SFSC when it does its own evaluation of faculty members. The 2006 SFSC members made the decision not to reappoint Abuelyaman, and he was told in a letter dated March 16, 2006, that he would not be reappointed past May 15, 2007.

Abuelyaman brought suit against ISU claiming retaliation and discrimination on the basis of his race, national origin, and religion. ISU's motion for summary judgment was granted on

Abuelyaman's discrimination claim. The parties now proceed to trial on Abuelyaman's claim that he was not reappointed as retaliation for his alleged complaints regarding student evaluations and the fall 2005 search committee process to fill a Telecommunications Management position. ISU filed its first Motion in Limine seeking to exclude the performance evaluations of Drs. Kappa, Theta, and Sigma, Dr. Kappa's tenure packet, information regarding the DAA Office's investigation into Dr. Zeta's termination, the investigative findings into Dr. Delta's complaint of discrimination, and certain other exhibits. The Court ruled that evidence regarding Drs. Kappa, Theta, and Sigma's performance and/or tenure is barred from use at trial, as none of them were similarly situated to Abuelyaman. The Court further ruled that evidence of Abuelyaman's participation in the DAA Office's investigation into Dr. Zeta's termination is barred from use at trial, and the investigative findings into discrimination complaints by Dr. Delta are barred because he was not similarly situated to Abuelyaman.

## DISCUSSION

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit v. CBI Industries*, 90 F.3d 1264, 1269 (7th Cir. 1996). It is not appropriate to argue matters that could have been raised in prior motions or rehash previously rejected arguments in a motion to reconsider. *Id.* at 1270.[1]

---

[1] ISU notes that Abuelyaman failed to bring his Motion to Reconsider pursuant to a particular Federal Rule of Civil Procedure. As ISU contends, it appears that Abuelyaman's motion is one more appropriately brought pursuant to Federal Rule of Civil Procedure 59(e), because he is arguing for reconsideration based upon the merits of the Court's ruling. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174-75 (1989) (reiterating that a postjudgment motion will be considered a Rule 59(e) motion where it pertains to reconsideration of matters encompassed in a decision on the merits).

**I.      Drs. Kappa, Theta, and Sigma's performance evaluations, Dr. Kappa's tenure packet**

When Abuelyaman first opposed ISU's motion to exclude Dr. Kappa's and Dr. Theta's performance evaluations, he focused on the contested relevancy of those exhibits, and summarily stated that those professors did not have to be similarly situated in all material respects to him. In his Motion to Reconsider, Abuelyaman delves further into the similarly situated argument, and cites to cases discussing the similarly situated analysis. ISU continues to argue that there are facts that distinguish the alleged comparators, but initially contends that Abuelyaman improperly raises this argument for the first time in his motion to reconsider. Because Abuelyaman discusses the issue of similarly situated in his Motion to Reconsider, which the Court discussed in ruling on ISU's Motion in Limine, the Court will address Abuelyaman's argument.

When the Court originally ruled on ISU's first Motion in Limine, it did follow Seventh Circuit precedent which calls for a "common-sense" inquiry into whether individuals are sufficiently similar to allow for meaningful comparison. *See Humphries v. CBOCS West, Inc.* 474 F.3d 387 (7th Cir. 2007); *Keri v. Bd. of Tr. of Purdue University*, 458 F.3d 620 (7th Cir. 2006) (explaining that a plaintiff must establish other employees were "similarly situated with respect to performance, qualifications, and conduct"). The Court ruled that Dr. Kappa was not similarly situated to Abuelyaman because Dr. Kappa was tenured, unlike Abuelyaman. The Court determined Dr. Theta was also not similarly situated to Abuelyaman because the former was an Assistant Professor, unlike Associate Professor Abuelyaman, and had created an entirely new sequence of courses and secured a grant for ISU, again unlike Abuelyaman. Though Abuelyaman argues that rank is not the only relevant factor, if a factor at all, ISU's Faculty Appointment, Salary, Promotion, and Tenure Policies make it clear that rank and tenure certainly

differentiate employees, and more importantly, distinguish the employer's treatment and evaluation of them. *See Keri*, 458 F.3d at 644 (tenured faculty, by virtue of their tenure, were not directly comparable to the plaintiff in all material respects). If it were as Abuelyaman suggests, it would be pointless to have differing ranks and tenure. In regard to Dr. Theta, his efforts in creating a new sequence of courses and securing a grant for ISU are differentiating circumstances which the Court simply cannot overlook in order to find him similarly situated to Abuelyaman. For the foregoing reasons, Abuelyaman's motion to reconsider the Court's ruling on the evidence of Dr. Kappa's[2] and Dr. Theta's performance and evaluations is denied.

Abuelyaman next argues that evidence relating to the employment of Drs. Kappa, Theta, and Sigma is admissible even if those professors were not similarly situated to him, because the evidence is relevant to whether ISU's stated reasons for his termination were pretextual. Abuelyaman seeks to introduce evidence that it was the practice of Dr. Dennis and the SFSC to warn non-tenured professors who were in danger of non-renewal that their contracts would not be renewed, and in some cases to counsel and mentor them in an effort to improve their performance. ISU contests the relevancy of this evidence, emphasizing the facts that these other professors were of different ranks than Abuelyaman, and that he was continually informed of his own deficiencies in yearly evaluations.

Abuelyaman's argument on this point fails. The Court rejected that argument when Abuelyaman originally made it in his Response to ISU's Motion for Summary Judgment. The Court found that ISU's internal procedures were followed in Abuelyaman's situation where he

---

[2] This is now the third time that the Court has had to address Abuelyaman's similarly situated argument in regard to Dr. Kappa. Each time the Court has done so, it has made clear the reason for why Dr. Kappa is not similarly situated to him.

was subject to annual performance evaluations in which suggestions were made as to how to improve his performance. Therefore, this evidence of alleged warnings given to other professors at ISU is barred from use at trial.

Abuelyaman's final attempt to get evidence of Dr. Kappa's, Dr. Theta's, and Dr. Sigma's yearly performance evaluations admitted at trial rests upon the argument that because ISU uses comparative evidence in support of its case, he should be permitted to do the same without regard to the similarly situated analysis. ISU disputes that contention, stating that it wishes to offer evidence of Abuelyaman's rank, as compared with other IT School faculty evaluations in teaching ability, which is relevant to the issue being decided, whereas other professors' performance evaluations are not probative of any issue to be decided. Defendant's proffered use is limited, extending only so far as to show Abuelyaman's rank on evaluations in terms of teaching ability. On the other hand, Abuelyaman's proffered use of the other faculty members' evaluations extends to the substance of those evaluations. Yet again, the lack of similarity between Abuelyaman and these three professors makes the use of their yearly performance evaluations improper at trial. Dr. Kappa's, Dr. Theta's, and Dr. Sigma's performance evaluations, and Dr. Kappa's tenure packet remain barred from use at trial.

## II.   The DAA Office's investigation into Dr. Zeta's termination

Abuelyaman asks the Court to reconsider its ruling barring evidence of his participation in the DAA Office's investigation into Dr. Zeta's termination, because he seeks to use the report for reasons other than to show his participation in the investigation. Abuelyaman seeks to use the report because it states the date Dr. Zeta was notified of the decision not to reappoint him, and makes reference to the fact that he was warned of termination if his performance did not

5

improve. Because Abuelyaman did not previously develop this argument in his response to ISU's Motion in Limine, it is waived for purposes of this Motion to Reconsider. *See Caisse Nationale de Credit,* 90 F.3d at 1270; *Mungo v. Taylor*, 355 F.3d 969, 978 ("Arguments raised for the first time in connection with a motion for reconsideration, however, are generally deemed to be waived.")

In his supplemental Offer of Proof, Abuelyaman makes clear that he seeks to introduce the DAA Office's Investigative Findings to memorialize the timing and nature of his participation in the investigation of Dr. Zeta's termination, expects to question the 2006 SFSC about the extent of their knowledge about his participation in the investigation, and he may testify about his participation. The Court ruled that evidence of Abuelyaman's participation in the DAA Office's investigation into Dr. Zeta's termination is barred from use at trial where the Court had previously granted summary judgment in ISU's favor regarding Abuelyaman's complaints to Dr. Bowman. However, the question of whether the 2006 SFSC knew of Abuelyaman's participation in the investigation of Dr. Zeta's complaints of discrimination is relevant to whether the 2006 SFSC retaliated against him for his discrimination complaints. As ISU argues, though, allowing the substance of the DAA Office's Investigative Findings into Dr. Zeta's termination may lead the jury to focus on a collateral issue, namely, whether Dr. Zeta's termination was appropriate. Such an issue is irrelevant. Accordingly, the documents detailing the DAA Office's investigation into Dr. Zeta's termination remain barred from use at trial, but 2006 SFSC members may testify as to their knowledge of Abuelyaman's participation in the

6

investigation, and Abuelyaman may testify to his participation.[3]  ISU represents that it will stipulate to the timing of events, as reflected in documents.

### III.     The DAA Office's investigation into Dr. Delta's complaint of discrimination

Abuelyaman originally argued that information regarding investigative findings into Dr. Delta's complaint of discrimination are relevant to whether Abuelyaman was retaliated against. He argued that if he could show that ISU retaliated against another professor who complained about discrimination, it makes it more likely that it also retaliated against him.  The Court ruled that because Dr. Delta was tenured, he was not similarly situated to Abuelyaman and so it would be inappropriate to compare Dr. Delta's situation to Abuelyaman's.  In his Motion to Reconsider, Abuelyaman contends that there are references in the DAA Office's report as to why certain SFSC members made decisions with regard to Dr. Delta prior to his tenure, which will make it useful to compare his treatment with Abuelyaman's.  The fact remains that Abuelyaman and Dr. Delta were not similarly situated when the SFSC members made their comments to the DAA Office during its investigation into Dr. Delta's discrimination complaints.

The decision made by Dr. Dennis and the SFSC to deny Dr. Delta promotion but grant him tenure was what prompted Dr. Delta to file his discrimination complaint.  Dr. Dennis and the other 2006 SFSC members were charged with making different decisions with regard to Abuelyaman's reappointment and Dr. Delta's application for tenure and promotion.  Dr. Delta

---

[3] In its Motion in Limine, ISU argued that Abuelyaman did not disclose during discovery that he was subject to retaliation for participating in the DAA Office's investigation into Dr. Zeta's termination, and so should be precluded from relying upon such information in support of his claim at trial.  ISU did, however, produce the DAA Office's Investigative Findings to Abuelayaman during discovery.  Additionally, Abuelyaman referenced his involvement in that investigation in support of his retaliation claim in his Response to ISU's Motion for Summary Judgment.  *See* Plf's Response, Docket Entry [44], p.31.

applied for a promotion from Assistant to Associate Professor and also tenure. Abuelyaman, on the other hand, was already an Associate Professor. ISU's Faculty Appointment, Salary, Promotion, and Tenure Policies reveal that promotion, tenure, and nonreappointment decisions are distinct from one another. Thus, it would be inappropriate to compare the 2006 SFSC's decision to terminate Abuelyaman with its decision to grant Dr. Delta tenure but deny him promotion. Therefore, any comments the 2006 SFSC members made during the DAA Office's investigation to explain their decisions in regard to Dr. Delta are irrelevant to how they proceeded with regard to Abuelyaman.

To the extent that Abuelyaman seeks to introduce the DAA Office's investigation into Dr. Delta's discrimination complaint in order to memorialize the timing and nature of his participation in that investigation, and to question witnesses about his participation, he is barred from doing so at trial. Abuelyaman originally stated in his response to ISU's Motion in Limine that he did not seek to introduce the investigative findings into Dr. Delta's complaint of discrimination as an instance of protected activity on Abuelyaman's part. Furthermore, the evidence shows that Dr. Delta's DAA Office complaint was stamped as received on March 27, 2006, which was after Abuelyaman was notified that he would not be reappointed. Thus, Abuelyaman's participation in Dr. Delta's DAA Office investigation is irrelevant to whether Abuelyaman was retaliated against for engaging in protected activity where his participation occurred after he was notified that he would not be reappointed. Finally, the introduction of the DAA Office's report of Dr. Delta's complaint would likely lead to a mini-trial on the issue of whether the SFSC discriminated against Dr. Delta. Any probative value of that report is substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed.

R. Evid. 403.

## **CONCLUSION**

For the reasons set forth herein, Abuelyaman's Motion for Reconsideration of this Court's Ruling on Defendant's Motion in Limine [#74] is DENIED.

ENTERED this 4th day of June, 2010.

s/Michael M. Mihm  
Michael M. Mihm  
United States District Judge
