UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ELTAYEB ABUELYAMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-1151 |
| | ) |
| ILLINOIS STATE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

### ORDER

Now before the Court is Defendant Illinois State University's Second Motion in Limine. For the reasons set forth below, the motion [#73] is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

Abuelyaman was employed by Defendant Illinois State University's ("ISU") School of Information Technology from the fall of 2001 until the fall of 2006 as a probationary, tenure-track Associate Professor. He was the only non-tenured Associate Professor in the IT School. He is of Yemeni and Saudi Arabian descent, and is Muslim. The IT School's Faculty Status Committee ("SFSC") annually evaluates probationary, tenure-track faculty members, and makes recommendations on reappointment, tenure and promotion, and pay raises. Student evaluations are considered by the SFSC when it does its own evaluation of faculty members. The 2006 SFSC members made the decision not to reappoint Abuelyaman, and he was told in a letter dated March 16, 2006, that he would not be reappointed past May 15, 2007.

Abuelyaman brought suit against ISU claiming retaliation and discrimination on the basis of his race, national origin, and religion. ISU's motion for summary judgment was granted on

Abuelyaman's discrimination claim. The parties now proceed to trial on Abuelyaman's retaliation claim. In its second motion in limine, ISU seeks to bar from use at trial performance evaluations and performance rankings for various professors, exhibits regarding the termination of some professors, and documents pertaining to the search for a Telecommunications Management Professor in 2005.

## DISCUSSION

ISU initially states that it is willing to concede that every performance evaluation or performance ranking for the years 2004, 2005 and/or 2006 was dated January 31st. ISU otherwise takes issue with Abuelyaman's attempt to add 70 plus exhibits regarding faculty members who are not similarly situated to him for time periods during which Abuelyaman was never evaluated. ISU goes on to argue the timing of such decisions regarding tenure, promotion, and decisions not to reappoint faculty members in their first few years at ISU are not relevant to any inquiry before the Court. ISU's Faculty Appointment, Salary, Promotion, and Tenure Policies (hereinafter "Policy Handbook"), Appendix 1, sets forth schedules for various actions to be taken by the University. *See* Dft's Second Motion in Limine, Exh. 1.

The Calendar for Reappointment provides that probationary faculty non-reappointment notification must be made not later than March 1st for professors in their first academic year of service, not later than December 15th of the second year of academic service, or at least 12 months before termination of appointment after two or more years of service. Dft's Exh. 1, p. 53. The Calendar for Performance Evaluation Review provides that SFSC recommendations for performance evaluation must be reported to the candidate by February 1st in each year that the faculty member is performance-evaluation eligible. *Id.* at 55. A faculty member must be

informed of his or her cumulative post-tenure review evaluation by February 15th. *Id.* at 55-56.

**I.     Plaintiff's Exhibits 35 and 36**[1]

ISU argues that Abuelyaman's exhibits 35 and 36, Dr. Zeta's 2004 Performance Evaluation and termination letters, are not relevant to the limited question of when notification of non-reappointment decisions were given to probationary faculty members because the University was required to provide Dr. Zeta with less notice than it must provide Abuelyaman. ISU further argues that the use of exhibit 36 would lead to a mini-trial on whether it was appropriate to terminate Dr. Zeta, and the exhibit is not otherwise relevant.

Abuelyaman argues that he seeks to introduce exhibit 35 to show that ISU had a normal practice to warn and counsel professors prior to deciding to terminate them. The use of different wording in Dr. Zeta's 2004 Performance Evaluation as compared to Abuelyaman's performance evaluations does not make it relevant and admissible for the purpose of arguing to the jury that the 2006 SFSC had no plans to terminate Abuelyaman until his complaints about discrimination escalated. He highlights a portion of Dr. Zeta's 2004 performance evaluation where the SFSC wrote that his insufficient teaching performance "could lead to [his] termination as a faculty member" and where the SFSC suggested he contact the Center for Advancement of Teaching in order to improve. Plf's Exh. B, p. 1. Abuelyaman received an annual Performance Evaluation each year he was employed by ISU, and in those evaluations he was encouraged to improve, and was given suggestions at to how to do so. Ultimately, as ISU contends, to allow the jury to

---

[1] The plaintiff's exhibit numbers referenced by ISU in its Motion in Limine, and used by the Court, are those enumerated in Abuelyaman's amended proposed pretrial order, Docket Entry 68. The Court has previously ruled on Plaintiff's other exhibits not otherwise discussed in this Order. *See* 2/11/2010 Text Order; *and* 6/4/2010 Order, Docket Entry 82.

consider Dr. Zeta's 2004 Performance Evaluation and termination letters poses a substantial risk that the jury will focus on the collateral, irrelevant issue of whether Dr. Zeta was improperly terminated. Abuelyaman's Exhibits 35 and 36 are therefore barred from use at trial.

## II.     Exhibits Involving Different SFSC Members

Defendant argues that evidence of various professors' annual performance evaluations and performance rankings should be barred because they were not similarly situated to Abuelyaman and many of the evaluations were conducted by a different SFSC than the one which voted to not reappoint Abuelyaman in 2006. Abuelyaman argues that these exhibits are relevant because they give insight into what the IT School values when rating professors, and gives insight into the language the evaluations use. He further explains that the evaluations give insight into the extent to which tenured, non-tenured, Assistant, Associate, and full Professors are evaluated similarly and differently. Abuelyaman's attempt to introduce the evaluations and rankings for the latter purpose is likely to mislead the jury and confuse them as to what the relevant issues are in this case.

The "value system" of the IT School Abuelyaman discusses, however, is somewhat relevant to one of the remaining issues of whether Abuelyaman was terminated by the 2006 SFSC as a result of engaging in protected activity. At a minimum, to be relevant to the remaining issues in this case, the performance evaluations, rankings, and other decisions discussed in the various exhibits must have been conducted by the same SFSC that decided to terminate Abuelyaman in 2006. Therefore, Exhibits 17, 32, 37-40, 47-50, 53-56, 59-62, 65-68, 70-73, 76-77, 79-80, 82-85, 88-89, 92-95, 98-101, 104-107, and 111-113 are barred from use at trial because they involve different compositions of the SFSC from the one that decided not to

reappoint Abuelyaman in March, 2006.

### III.     Exhibits Involving Assistant Professors and tenured Professors

ISU disputes the relevance of Abuelyaman's exhibits which include the performance evaluations and rankings of those professors who were at the Assistant level and those who were tenured.  It repeats that Assistant Professors are held to lower standards than are Associate Professors, and tenured professors are held to different standards than non-tenured professors. Abuelyaman is correct to note that the direct method of proving retaliation does not require him to identify similarly situated individuals.  But the evidence must still be relevant, regardless of which method is used.

Abuelyaman argues that though ISU's Policy Handbook explains the required timing of decisions, its actual practice is relevant as well.  He further states that the jury should be permitted to examine the typical timing lapse between SFSC decisions relating to faculty employment, and that ISU may argue at trial that some of the differences in timing are attributable to outside factors or differences between professors and the employment decisions being made.  The differences that Abuelyaman suggests can be argued by ISU at trial are those that go to the question of whether the evidence is relevant in the first place.  It is therefore more appropriate to determine the admissibility of this evidence at this stage.

ISU's Faculty Appointment, Salary, Promotion, and Tenure Policies states in relevant part:

> The attainment of successively higher academic ranks at Illinois State University marks professional growth and the achievement of status within a discipline. Further, such status is generally expected to be demonstrated by a sustained record of professional competence . . . .

Dft's Exh. 1, p. 25.  The Policy Handbook goes on to set forth the requirements in teaching,

scholarly and creative productivity, and service for promotion. For promotion from Instructor to Assistant Professor, the Policy Handbook states:

> a. The candidate shall possess the appropriate terminal degree or its equivalent in the discipline, as determined by the Department/School and the College, together with other professional qualifications and accomplishments, including demonstrated teaching competence in the candidate's field of academic concentration.
>
> b. The candidate's continuing professional growth and professional activities should be of sufficient quality to warrant promotion to Assistant Professor.

*Id.* at 26. For promotion from Assistant Professor to Associate Professor, the Policy Handbook states:

> a. The candidate shall possess the appropriate terminal degree in the discipline, as determined by the Department/School and the College, or sufficient stature in their field and profession, as attested to by regionally and nationally recognized accomplishments . . . to justify waiving the requirement of an appropriate terminal degree.
>
> b. A candidate may bring in up to two years of full-time service at the rank of assistant professor at the college or university level in consideration for promotion to Associate Professor. An Assistant Professor is eligible for review for promotion in the fourth year of service . . .
>
> c. The candidate's continuing professional growth and professional activities should be of sufficient quality to warrant promotion to Associate Professor.

*Id.* at 26-27. The Policy Handbook additionally sets forth the requirements for possible promotion from Associate Professor to Professor. *See id.* at 27. Because ISU's own Policy Handbook makes distinctions between professor ranks and requires that the promotion from Assistant Professor to Associate Professor be warranted, the difference is significant enough to bar Abuelyaman from presenting exhibits involving Assistant Professors and full Professors. Also, because the Policy Handbook provides a separate, detailed criteria to be satisfied in order to be granted tenure, the SFSC's treatment and evaluation of tenured professors and those who

6

applied for tenure is distinguishable from its treatment of non-tenured professors. Assistant Professors, full Professors, and tenured professors are simply not similar enough to Abuelyaman as a non-tenured, Associate Professor to make exhibits involving those differing ranks relevant. There is too great a risk that the jury will be confused and misled by the introduction of evidence regarding professors of different rank and tenure status, and arguably could focus on collateral issues. Therefore, Exhibits 10, 33-34, 51-52, 63-64, 69, 74-75, 78, 86-87, 90-91, 96-97, 102-103, and 108-109 are barred from use at trial because they include professors of different ranks and/or tenure status. In any event, the exhibits Abuelyaman seeks to introduce in order to establish the timing of decisions made by ISU and transmitted to the faculty member would not all be allowed into evidence during trial because they are cumulative.

**IV.    Documents relating to the applications of candidates for the 2005 Telecommunications Management Position**

Exhibits 18 through 21 include an email exchange, job posting by ISU, and the resumes of two applicants, all in regard to ISU's IT School's search to fill a Telecommunications Management position in 2005. ISU argues that these four exhibits are irrelevant to the only remaining claim of whether Abuelyaman was retaliated against for engaging in protected activity. ISU further contends that the use of such exhibits at trial will result in a collateral trial on which candidate was the superior candidate or which candidate Dr. Dennis should have selected to fill the vacant position. Abuelyaman argues these exhibits are admissible as circumstantial evidence pointing toward retaliatory intent. He further argues that the exhibits are relevant to show that Dr. Dennis had a habit of disregarding objective indicators of a candidate's performance when evaluating the competence of candidates and employees, which would go to the question of whether ISU's stated reasons for Abuelyaman's non-reappointment are unworthy

of belief.

Dr. Dennis' underlying assessment of the two candidates is irrelevant to the remaining issues in this case. To allow the exhibits into evidence and to allow plaintiff's counsel to question Dr. Dennis and Dr. Delta as to the search committee's assessment of those two candidates poses a significant risk that a collateral trial will result. The issues of who was the better candidate, and how Dr. Dennis and the remaining search committee members went about deciding between the two, are not relevant to whether Abuelyaman engaged in protected activity and was terminated as a result of doing so. Furthermore, any alleged probative value of the applicants' qualifications and Dr. Dennis' and the search committee's assessment of the two applicants would be substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* FED. R. EVID. 403. Any "habit" Dr. Dennis may have had in disregarding objective indicators of a candidate's performance when evaluating the competence of candidates and employees is not established by one very particular situation. *See* FED. R. EVID. 406; *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988) (discussing Federal Rule of Evidence 406 and stating that the offering party must show the conduct is "semi-automatic" in nature).

Exhibits 18 through 21 are therefore barred from use at trial. Because an issue that remains is whether Abuelyaman engaged in statutorily protected activity, the parties may question Abuelyaman, Dr. Dennis, and Dr. Delta about what the 2006 SFSC knew of Abuelyaman's complaints regarding the search to fill the position and the nature of those complaints. The parties may not, however, question those witnesses as to the underlying assessment of the two candidates for the same reasons why Exhibits 18 through 21 are barred

from use at trial.

## V.     Plaintiff's Exhibit 27

Plaintiff's Exhibit 27 purports to be a document taken from the website referenced on the first page of the student evaluation forms used by ISU.  ISU objects to Abuelyaman's use of this document at trial, arguing that Abuelyaman did not previously identify the document nor turn it over in the course of discovery in accordance with Federal Rule of Civil Procedure 26, and so should not be permitted to use it under Federal Rule of Civil Procedure 37(c).  ISU states that the document does not currently appear at the web address and it is otherwise unable to know the document's authenticity, or question and appropriately cross-examine the document.  Abuelyaman responds that the document, *Overview of Student Ratings: Value and Limitations*, was taken from a website referenced in Exhibit 26.  He argues that because ISU was the source of Exhibit 26, there is no prejudice to it because of the fact that Exhibit 27 itself was not produced in discovery, and ISU had access to Exhibit 26 and the referenced website since early in the discovery process.

ISU's argument under Rule 37(c), that Exhibit 27 was not previously identified or turned over in the course of discovery, lacks merit where its own document, Exhibit 26, was the one that referenced the website where Exhibit 27 could be found.  At this point, the Court cannot determine whether Abuelyaman will be permitted to use Exhibit 27 at trial.  First, the Court cannot even examine Exhibit 27, as it has not been provided a copy of the exhibit.  Furthermore, Abuelyaman will have to lay the appropriate foundation for Exhibit 27, establishing that the document he seeks to admit is an authentic copy of the one that existed on the website at the time he was subject to the IDEA student evaluations, in order for the Court to rule on its admissibility.

The Court therefore denies ISU's motion to exclude Abuelyaman's Exhibit 27 from use at trial. ISU is not precluded from making an appropriate objection during trial at the time that Abuelyaman seeks to introduce the exhibit.

## CONCLUSION

For the reasons set forth above, Defendant ISU's Second Motion in Limine [#73] is GRANTED IN PART and DENIED IN PART. ISU's motion is granted in regard to Plaintiff's Exhibits 10, 17, 18-21, 32-40, 47-56, 59-80, 82-109, and 111-113. ISU's motion is denied in regard to Plaintiff's Exhibit 27.

ENTERED this 9th day of June, 2010.

s/Michael M. Mihm
Michael M. Mihm
United States District Judge